1 | Thomas V. Girardi, SBN # 36603
Stephen G. Larson, SBN # 145225
2 | **GIRARDI | KEESE**
1126 Wilshire Boulevard
3 | Los Angeles, California 90017
Telephone: 213-977-0211
4 | Facsimile: 213-481-1554
Email: tgirardi@girardikeese.com
5 | Email: slarson@girardikeese.com
*Counsel for Plaintiffs*
6 | *and Proposed Class Members*
7 |

E-filing    FILED
FEB - 4 2010
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

8 | ## UNITED STATES DISTRICT COURT

9 | ### NORTHERN DISTRICT OF CALIFORNIA

10 | CHRISTOPHER JOHNSON, DENNIS
MCDAVID, SALLY O'DONAGHUE,
11 | MURRAY MILLER and ANDREW CROSBY,
on behalf of themselves and others similarly
12 | situated;

CV 10 507

CASE NO.

**INDIRECT PURCHASER
PLAINTIFFS' CLASS ACTION
COMPLAINT**

13 | Plaintiff,

**DEMAND FOR JURY TRIAL**

14 | vs.

15 | SONY OPTIARC. INC.; SONY OPTIARC
AMERICA INC.; SONY NEC OPTIARC
16 | INC.; SONY CORP.; TOSHIBA SAMSUNG
STORAGE TECHNOLOGY CORP.;
17 | TOSHIBA CORP.; SAMSUNG
ELECTRONICS CO.; HITACHI-LG DATA
18 | STORAGE INC.; HITACHI LTD.; and LG
ELECTRONICS INC.;
19 |
Defendants.
20 |

21 |     Plaintiffs, indirect purchasers of products containing optical disc drives as defined
22 | below, on behalf of themselves and all other similarly situated indirect purchasers, for their
23 | Complaint against all Defendants named herein, demand trial by jury of all claims properly
24 | triable thereby, and complain and allege as follows:
25 |
26 |
27 |
28 |

1

2

## I. INTRODUCTION

3    1.    This case arises out of a long-running conspiracy extending from at least

4  November 1, 2005, through the present (the "Class Period"), among Defendants and their

5  co-conspirators, with the purpose and effect of fixing, raising, and maintaining prices for

6  products containing optical disc drives ("ODDs") (referred to collectively as "ODD

7  Products") sold indirectly to Plaintiffs and other indirect purchasers throughout the

8  United States.

9    2.    Plaintiffs are informed and believe, and thereon allege, that Defendants and

10  their co-conspirators formed an international cartel to illegally restrict competition in the

11  ODD market, targeting and severely burdening indirect purchasers throughout the United

12  States. During the Class Period, the conspiracy affected billions of dollars of commerce

13  throughout the United States.

14    3.    Plaintiffs are informed and believe, and thereon allege, that said conspiracy

15  included communications and meetings in which Defendants conspired, combined, and

16  contracted to fix, raise, maintain, and stabilize the price at which ODD Products were

17  sold in the United States in order to maintain price stability and increase profitability in

18  the ODD market.

19    4.    Plaintiffs are informed and believe, and thereon allege, that Defendants

20  fraudulently concealed their anticompetitive conduct from Plaintiffs and the Class in

21  furtherance of the conspiracy.

22    5.    As a result of Defendants' price fixing conspiracy, Plaintiffs have been

23  injured in their businesses and property by paying more for ODD Products than they

24  otherwise would have paid in the absence of said conspiracy. Such prices exceeded the

25  amount Plaintiffs would have paid if the price for ODD Products had been determined by

26  a competitive market.

27    6.    Plaintiffs bring this action seeking federal injunctive relief under Section 16

28  of the Clayton Act, 15 U.S.C. § 26 for violations of Section 1 of the Sherman Act, 15

1    U.S.C. § 1, and to recover damages under state antitrust, consumer protection, unfair
2    trade, and/or deceptive trade practices laws, common law principles of restitution,
3    disgorgement, unjust enrichment, as well as to recover the costs of suit, including
4    reasonable attorneys fees, for the injuries that Plaintiffs and all others similarly situated
5    sustained as a result of the Defendants' conspiracy to fix, raise, maintain and stabilize the
6    prices of ODD Products.

7    7.    ODDs that are the subject of this lawsuit include the following formats for
8    use in notebook and desktop computers: CD-ROMS ("CD"), CD-recordable/rewritable
9    ("CD-R/RW"), DVD-ROM ("DVD"), DVD-recordable/rewritable (DVD±R/RW), Blu-
10    Ray ("BD"), Blu-Ray-recordable/rewritable ("BD-R"/"BD-RE") and HD-DVD. During
11    the Class Period, ODDs served as one of the primary means for recording and reading
12    music, movies, and other digital data. During this time, Defendants' sales of ODDs
13    generated billions of dollars in annual revenues and exponentially grew due to the
14    increased utilization of computers in households and businesses throughout the United
15    States. Nearly every computer that is used or sold in the United States today is equipped
16    with an ODD.

## II. JURISDICTION AND VENUE

18    8.    Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C.
19    26) to secure equitable relief against Defendants due to their violations of Section 1 of the
20    Sherman Antitrust Act (15 U.S.C. 1), as well as under the antitrust and other laws of the
21    State of California and other States listed herein to obtain restitution, recover damages,
22    and to secure other relief against Defendants for violation of those laws.

23    9.    This Court has subject matter jurisdiction of the federal antitrust claims
24    asserted in this action under Sections 4 and 16 of the Clayton Antitrust Act (15 U.S.C.
25    15(a) and 26), Title 28 United States Code Sections 1331 (federal question) and 1337 (a)
26    (commerce and antitrust regulation), and Section 1 of the Sherman Act (15 U.S.C. 1).
27    This Court has subject matter jurisdiction of the state law claims asserted in this action
28    under Title 28, United States Code Sections 1332(d) and 1367, in that the matter in

1   controversy exceeds the sum of $5,000,000 exclusive of interest and costs, and in which
2   some members of the indirect purchaser Class are citizens of states different from some
3   Defendants, and certain Defendants are citizens or subjects of foreign states.

4       10.     Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 15 and 22,
5   and 28 U.S.C. § 1391(b) and (c), in that one or more of the Defendants reside, is licensed
6   to do business in, or is found to or does transact business in this District. Additionally, a
7   substantial part of the interstate trade and commerce involved and affected by the alleged
8   violations of the antitrust laws was and is carried on in part within this District.

9       11.     During the Class Period, each Defendant or one or more of its subsidiaries,
10  conducted business throughout the United States, including this jurisdiction, and they
11  have purposely availed themselves of the laws of the United States, including specifically
12  the laws of the State of California and the individual states listed herein. Defendants'
13  ODD Products are sold in a continuous and uninterrupted flow of interstate commerce
14  and foreign commerce, including through and into this District.

15      12.     Defendants' business activities had a direct, substantial and reasonably
16  foreseeable effect on trade and commerce in the United States and caused antitrust injury
17  in the United States.

18      13.     Defendants' conspiracy to fix the price of ODD Products substantially
19  affected commerce throughout the United States and in each of the states identified
20  herein because Defendants, directly or through their agents and/or co-conspirators,
21  engaged in activities affecting each such state. Defendants have purposely availed
22  themselves of the laws of each state identified herein in connection with their activities
23  relating to the production, marketing and sale of ODD Products. Defendants produced,
24  promoted, sold, marketed, and/or distributed ODD Products, thereby purposefully
25  profiting from access to indirect purchasers in each such state. Defendants also
26  contracted to supply or obtain goods or revenue related to the business for ODD
27  Products. As a result of the activities described herein, Defendants:

28          a.      Caused damage to the residents of the states identified herein;

4
CLASS ACTION COMPLAINT

1            b.     Caused damage in each of the states identified herein by acts or

2                 omissions committed outside each such state by regularly doing or

3                 soliciting business in each such state;

4            c.     Engaged in persistent courses of conduct within each such state and/or

5                 derived substantial revenue from the marketing of ODD Products (and

6                 services related to such marketing); and

7            d.     Committed acts or omissions that they knew or should have known

8                 would cause damage (and did, in fact, cause such damage) in each

9                 such state while regularly doing or soliciting business in each such

10                state, engaging in other persistent courses of conduct in each such

11                state, and/or deriving substantial revenue from the marketing of ODD

12                Products in each such state.

13       14.    The conspiracy described herein adversely affected every person

14   nationwide and in each of the states identified in this Complaint who indirectly bought

15   Defendants' ODD Products. Defendants' conspiracy has resulted in an adverse monetary

16   effect on indirect purchasers in each state identified.

17       15.    Prices of ODD Products in each state can be manipulated by conspirators

18   within that state, outside of it, or both. Without enforcing the antitrust and/or consumer

19   protection laws of each state identified herein, companies that break the law will go

20   unpunished. Defendants knew that commerce in each state identified herein would be

21   adversely affected by implementing their conspiracy.

22                                 **III.   PARTIES**

23   **A.   Plaintiffs**

24       16.    Within the Class Period, the following Plaintiffs indirectly purchased ODD

25   Products from one or more of Defendants named herein in the state in which he or she

26   resides for his or her own use and not for resale, and suffered injury as a result of

27   Defendants' illegal conduct described in this Complaint.

28       17.    Plaintiff Christopher D. Johnson ("California Plaintiff"), a resident of

1 California, indirectly purchased an ODD when he purchased a personal computer during
2 the Class Period, and was injured as a result of Defendants' illegal conduct.

3     18.    Plaintiff Dennis McDavid ("Arizona Plaintiff"), a resident of Arizona,
4 indirectly purchased an ODD when he purchased a personal computer during the Class
5 Period, and was injured as a result of Defendants' illegal conduct.

6     19.    Plaintiff Sally O'Donoghue ("Arizona Plaintiff"), a resident of Arizona,
7 indirectly purchased an ODD when she purchased a desktop computer containing an
8 ODD during the Class Period, and was injured as a result of Defendants' illegal conduct.

9     20.    Plaintiff Murray Miller ("Florida Plaintiff"), a resident of Florida, indirectly
10 purchased an ODD when he purchased a personal computer and other external ODDs
11 during the Class Period, and was injured as a result of Defendants' illegal conduct.

12     21.    Plaintiff Andrew Crosby ("Tennessee Plaintiff"), a resident of Tennessee,
13 indirectly purchased an ODD when he purchased a laptop computer containing an ODD
14 during the Class Period, and was injured as a result of Defendants' illegal conduct.

15 **B.   Defendants**

16     22.    Defendant Sony Optiarc America, Inc. ("SOA") is a wholly owned
17 subsidiary of Defendant Sony Optiarc, Inc. Defendant SOA is a Delaware corporation
18 with its business headquarters located at 1730 N. 1st Street, San Jose, California 95112.
19 During the Class Period, SOA manufactured, sold, and distributed ODD Products
20 throughout the United States.

21     23.    Defendant Sony Optiarc, Inc. ("SOI") is a Japanese company with its
22 headquarters located at 4-16-1 Okata, Atsugi-shi, Kanagawa 243-002,1 Japan. Prior to
23 its formation in 2008, Defendant SOI was a joint venture between Defendants Sony Corp.
24 and NEC Corp. called Sony NEC Optiarc, Inc. On September 11, 2008, Sony Corp.
25 purchased NEC Corp.'s interest in Sony NEC Optiarc, Inc. The company was
26 subsequently renamed SOI. In 2008, SOI reported revenues of $1.52 billion. During the
27 Class Period, SOI manufactured, sold, and distributed ODD Products throughout the
28 United States.

24.     Defendant Sony NEC Optiarc, Inc. ("SNOI") was a Japanese company with its headquarters located at 4-16-1 Okata, Atsugi-shi, Kanagawa 243-0021, Japan. Defendant Sony NEC Optiarc, Inc. was created on April 3, 2006 as a joint venture between Defendants Sony Corp. and NEC Corp. in which Sony Corp. had a 55% interest and NEC Corp. had a 45% interest. Sony Corp. purchased NEC Corp.'s interest in Sony NEC Optiarc, Inc. in 2008 and renamed it Sony Optiarc, Inc. During the Class Period, SNOI manufactured, sold, and distributed ODD Products throughout the United States. Sony Corp. and NEC Corp. exercised joint control over SNOI

25.     Defendant Sony Corp. ("Sony") is a Japanese company with its principal place of business at 22-22 Nagaike-cho, Abeno-ku, Oasaka 545-8522, Japan. During the Class Period, Sony manufactured, sold, and distributed ODD Products throughout the United States.

26.     Defendant Toshiba Samsung Storage Technology Corp. ("TSST") is a joint venture of Defendants Toshiba Corp. and Samsung Electronics Co. that was established on April 1, 2004. Toshiba owns 51% of the stock in TSST, while Samsung owns the remaining 49%. TSST and Toshiba share corporate headquarters, which are located at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan. During the Class Period, TSST manufactured, sold, and distributed ODD Products throughout the United States. Toshiba Corp. and Samsung Electronics Co. jointly control TSST. TSST forecasted revenue of Y250 billion in fiscal year 2004, when it was established.

27.     Defendant Toshiba Corp. ("Toshiba") is a Japanese company with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan. During the Class Period, Toshiba manufactured, sold, and distributed ODD Products throughout the United States.

28.     Defendant Samsung Electronics Co., Ltd. ("Samsung") is a Korean company with its principal place of business at Samsung Main Building, 250, Taepyeongno 2-ga, Jung-gu, Seoul 100-742, Korea. During the Class Period, Samsung manufactured, sold, and distributed ODD Products throughout the United States.

29.     Hitachi-LG Data Storage ("HLDS") is a joint venture between Defendants Hitachi, Ltd. and LG Electronics, Inc., with its corporate headquarters located at 4F MSC Center Bldg., 22-23, Kaigan 3-chome, Minato-Ku, Tokyo 108-0022, Japan. Hitachi, Ltd. owns 51% of the stock in HLDS, while LG Electronics, Inc. owns the remaining 49%. Hitachi, Ltd. and LG Electronics, Inc. jointly control and direct the operations of HLDS. HLDS was established in November of 2000 and started operation in January of 2001. Between 2001 and 2005 HLDS sold over 170 million optical disc drives, generating approximately \$5.5 billion in total revenues. During the Class Period, HLDS manufactured, sold, and distributed ODD Products throughout the United States.

30.     Defendant Hitachi, Ltd. ("Hitachi") is a Japanese company with its principal executive office at 6-6, Marunouchi 1-chome, Chiyoda-ku,, Tokyo 100-8280, Japan. During the Class Period, Hitachi manufactured, sold, and distributed ODD Products throughout the United States.

31.     Defendant LG Electronics, Inc. ("LG Electronics") is a Korean entity headquartered at LG Twin Towers 20, Yeouido-dong, Yeongdeungpo-gu, Seoul, South Korea 150-721. During the Class Period, LG Electronics manufactured, sold, and distributed ODD Products throughout the United States.

## C.     Agents and Co-Conspirators

32.     Various other persons, firms and corporations, not currently named herein as Defendants have participated as co-conspirators with the Defendants in the violations alleged herein, and have performed acts and made statements in furtherance thereof. Some of these firms are currently unidentified. Plaintiffs are informed and believe, and thereon allege, that these co-conspirators include Lite-On IT Corporation, Koninklijke Philips Electronics N.V. and their joint venture that makes ODD Products, Philips & Lite-On Digital Solutions Corporation and its United States subsidiary, Philips & Lite-On Digital Solutions USA, Inc. Plaintiffs seek leave to amend this Complaint to add co-conspirators as Defendants as they are conclusively identified.

33.     The acts alleged against Defendants in this Complaint were authorized,

**1** ordered, or done by Defendants' officers, agents, employees, or representatives, while
**2** actively engaged in the management and operation of each Defendant's business or
**3** affairs.

**4** 34. Each Defendant acted as the principal, agent, or joint venturer of, or for,
**5** other Defendants with respect to the acts, violations, and common course of conduct
**6** alleged herein. Each Defendant that is a subsidiary of a foreign parent acts as the United
**7** States agent for the ODDs and ODD Products made by its parent company.

**8** 35. Whenever this Complaint refers to an act, deed or transaction of a
**9** corporation or entity, the Complaint is alleging that the corporation or entity engaged in
**10** the act, deed or transaction by or through its officers, directors, agents, employees, or
**11** representatives while they were actively engaged in the management, direction, control or
**12** transaction of the corporation or entity's business or affairs.

**13**

### V. NATURE OF TRADE AND COMMERCE

**14** ### A. Optical Disc Drive Technology

**15** 36. Optical discs contain microscopic pits where data is stored. These pits are
**16** made from a crystalline metal alloy and are usually pressed into the disc in a spiral
**17** arrangement, starting at the center of the disc. The pits are approximately 0.8
**18** micrometers on CDs, 0.4 micrometers on DVDs, and 0.15 micrometers on BDs. Once a
**19** disc containing data is inserted into an ODD, the disc spins while a lens inside the device
**20** guides a semiconductor laser beam over the disc and a photodiode detects the light
**21** reflected from the disc's bumps and pits. The laser moves outward from the center of the
**22** disc, scanning over the disc's surface. Then the photodiode reads the light's reflection as a
**23** binary code, a series of ones and zeros, that the computer translates into usable data. As
**24** the lasers hit the pits on a disc, changes in the intensity of the beams are detected and
**25** translated into electrical signals. The more pits that can be packed onto a disc, the more
**26** data that disc can store. Reading the different disc formats requires an ODD to have
**27** lasers of different wavelengths. Blu-ray disc players use a shorter wavelength laser to
**28** read discs, which is blue-violet. Additional layers may also be added to the disc,

9

1 allowing increased storage capacity.

2      37. In addition to reading discs, ODDs can write and rewrite on the disc,
3 depending on the technology of the drive and accompanying disc. Discs that have this
4 capability are generally referred to as a recordable disc (*e.g.*, CD-R, DVD-R or BD-R).
5 When a recordable disc is inserted into an ODD that has the ability to record data, the
6 ODD's laser is used to selectively heat parts of the organic photosensitive dye layer. By
7 exposing the disc to light with the laser, the reflective properties of the disc's surface
8 change, which causes the photodiode to recognize these changes as bumps and pits and
9 read the new information on the disc.

10      38. An optical drive is about the size of a thick soft cover book. The front of
11 the drive has a small Open/Close button that ejects and retracts the drive bay door. This is
12 how media like CDs, DVDs, and BDs are inserted into and removed from the drive.
13 Where the disc drive is intended for internal use in a computer, the sides of the drive have
14 pre-drilled, threaded holes for easy mounting in the drive bay in the computer case. In
15 that case, the optical drive is mounted so the end with the connections faces inside the
16 computer and the end with the drive bay faces outside. The back end of the optical drive
17 generally contains a port for a cable that connects to the motherboard. Also here is a
18 connection for power from the power supply. Most optical drives also have jumper
19 settings on the back end that define how the motherboard is to recognize the drive when
20 more than one is present. These settings vary from drive to drive.

21      39. ODDs include half-height and slimline models. Half-height ODDs are
22 thicker and generally incorporated into desktop computer towers. Slimline ODDs are
23 thinner and generally incorporated into laptop computers. As laptop computers have
24 become more popular with consumers, demand for slimline optical disc drives has
25 increased and is expected to overtake half-height demand over the next five years.

26      40. Table 1 provides an overview of the names, sizes and capabilities of the
27 main, available ODD standards. There are also differences in ODDs with regard to data
28 access speeds and writing speeds. ODDs built more recently are "backwards compatible"

1  such that ODDs with the latest technology can still read first generation CD-ROMs. DVD
2  rewriteable drives have been the mainstream ODD used in computers since 2006.

| Table 1: Overview of Optical Disc Drive Standards | | |
|---|---|---|
| **Drive Standard** | **Capacity [a]** | **Capability** |
| CD-ROM | 700 MB | Read Only |
| CD-R | 700 MB | Read, Write |
| CD-RW | 700 MB | Read, Write, Rewritable |
| DVD-ROM | 4.7 GB | Read Only |
| DVD-RAM | 4.7 GB | Read, Write |
| DVD-R [b] | 4.7 GB | Read, Write |
| DVD-RW [b] | 4.7 GB | Read, Write, Rewritable |
| BD-ROM | 25 GB Single Layer; 50 GB Dual Layer | Read Only |
| BD-R | 25 GB Single Layer; 50 GB Dual Layer | Read, Write |
| BD-RE | 25 GB Single Layer; 50 GB Dual Layer | Read, Write, Rewritable |

[a] These are standard capacities. Depending on the number of layers, or if the disc can be read double-sided, the capacity will be larger.

[b] There are other DVD standards such as DVD+R/RW, which include other features or improvements- see http://www.videohelp.com/dvd.

Source: See http://www.videohelp.com/dvd and http://www.tech-faq.com/blu-ray.shtml.

### B.  Optical Disc Drive Industry Background

22  41.  The first ODD was invented with the creation of the audio compact disc
23  (audio "CD"), which was jointly invented by Sony and Philips Electronics ("Philips"). In
24  1972, Philips announced a technique for storing audio recordings on an optical disc with
25  a small diameter. At the same time, Sony was exploring optically recording audio on a
26  larger disc but was focusing on developing an error correction technique. In 1978, Sony
27  and Philips agreed on a single format for the disc and the error correction method that
28  would be used. The compact disc system was introduced to the public in Japan and

**1** Europe in 1982. Since the 1980s, several companies have created spin-offs of the CD
**2** project by covering specific CD-based applications and extending the previously
**3** established standards set by Sony and Philips.

**4** 42. Once a standard for creating a CD was established and an optical device
**5** that could read data from said disc was developed, CD-ROM drives began to penetrate
**6** the computer market. ODDs have been in common use in computers since the 1990s,
**7** when CD-ROM drives became affordable for the average consumer. Thereafter,
**8** manufacturers developed ODDs for computers that could read and write DVDs and Blu-
**9** Ray discs, which can hold more data than an older CD-ROM.

**10** 43. Today, ODDs are a standard component on almost every computer used in
**11** the United States. Due to the increasing popularity of personal computers, hundreds of
**12** millions of ODD Products are shipped by Defendants each year, generating billions of
**13** dollars in annual revenues. As seen in Figures 1 and 2 below, worldwide ODD
**14** shipments increased to over 300 million in 2007 and generated over $45 billion in
**15** revenues between 2004 and 2008.



**16** **Worldwide Optical Drive Shipment Value,**
**2004-2008**

CLASS ACTION COMPLAINT

1



**Worldwide Optical Disk Drive Shipments**

Source: Digitimes Research: ICT Reports · 1Q 2005 and Q4 2007

2
3
4
5
6
7
8
9
10
11

12      44.     In 2008, Samsung estimated that the ODD market for personal computers is

13   313 million units per year and the ODD market for all other applications (*e.g.*,

14   automotive audio and video, personal video recorders, set top boxes, CD/ DVD players

15   and recorders, camcorders, and game consoles) is 200 million units per year.

16                    **VI.     CLASS ACTION ALLEGATIONS**

17      45.     Plaintiffs bring this action on their own behalf and as a class action

18   pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), on behalf of the following

19   Class (the "Nationwide Class" or "Class"):

20        All persons and entities residing in the United States that, from at least

21        November 1, 2005, through the present that indirectly purchased ODD

22        Products in the United States from one or more Defendants for their own

23        use and not for resale.     Specifically excluded from this Class are

24        Defendants; the officers, directors or employees of any Defendant; any

25        entity in which any Defendant has a controlling interest; and any affiliate,

26        legal representative, heir or assign of any Defendant.     Also excluded are

27        any federal, state, or local governmental entities, any judicial officer

28

1

2

presiding over this action and the members of his/her immediate family and

judicial staff, and any juror assigned to this action.

3

4

5

6

7

46.    Plaintiffs also bring this action on their own behalf and as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure and/or respective state statute(s), on behalf of all members of the following state Classes (collectively, the "Indirect Purchaser State Classes" or "State Classes" or "Classes"):

8

9

10

11

12

13

14

15

16

17

18

a.    **CALIFORNIA:** All persons and entities in California who indirectly purchased an ODD manufactured and/or sold by one or more of the Defendants during the Class Period, and did so for their own use and not for resale.  Specifically excluded from this Class are Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "California Indirect Purchaser Class").

19

20

21

22

23

24

25

26

27

28

b.    **ARIZONA:**    All persons and entities in Arizona who indirectly purchased an ODD manufactured and/or sold by one or more of the Defendants during the Class Period, and did so for their own use and not for resale. Specifically excluded from this Class are Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the

1                                   "Arizona Indirect Purchaser Class").

2           c.    **FLORIDA**:   All persons and entities in Florida who indirectly

3                     purchased an ODD manufactured and/or sold by one or more of the

4                     Defendants during the Class Period, and did so for their own use and

5                     not for resale.  Specifically excluded from this Class are Defendants;

6                     the officers, directors or employees of any Defendant; any entity in

7                     which any Defendant has a controlling interest; and any affiliate, legal

8                     representative, heir or assign of any Defendant.  Also excluded are

9                     any federal, state or local governmental entities, any judicial officer

10                  presiding over this action and the members of his/her immediate

11                  family and judicial staff, and any juror assigned to this action (the

12                  "Florida Indirect Purchaser Class").

13           d.    **TENNESSEE**: All persons and entities in Tennessee who indirectly

14                  purchased an ODD manufactured and/or sold by one or more of the

15                  Defendants in the United States during the Class Period, and did so

16                  for their own use and not for resale.  Specifically excluded from this

17                  Class are Defendants; the officers, directors or employees of any

18                  Defendant; any entity in which any Defendant has a controlling

19                  interest; and any affiliate, legal representative, heir or assign of any

20                  Defendant.  Also excluded are any federal, state or local governmental

21                  entities, any judicial officer presiding over this action and the

22                  members of his/her immediate family and judicial staff, and any juror

23                  assigned to this action (the "Tennessee Indirect Purchaser Class").

24         47.    The precise number of Class members is unknown to Plaintiffs because

25 such information is in the exclusive control of Defendants.  However, due to the nature of

26 the trade and commerce involved, Plaintiffs are informed and believe, and thereon allege,

27 that there are at least hundreds of thousands in each Indirect Purchaser State Class and

28 most likely tens of millions of Nationwide Class members geographically dispersed

1 throughout the United States, such that joinder of all Class members is impracticable.

2 48. Plaintiffs reserve the right to expand, modify or alter any and all Class
3 definitions in response to information learned during discovery.

4 49. Plaintiffs reserve the right to expand, modify or alter the Class Period
5 definition in response to information learned during discovery.

6 50. Plaintiffs' claims are typical of the claims of the other members of the
7 Class. Plaintiffs and all members of the Class are similarly affected by Defendants'
8 wrongful conduct in violation of the antitrust laws in that they paid artificially inflated
9 prices for ODD Products purchased indirectly from Defendants. Therefore, Plaintiffs'
10 claims arise from the same common course of conduct giving rise to the claims of the
11 members of the Class and the relief sough is common to the Class.

12 51. Numerous questions of law or fact arise from Defendants' anticompetitive
13 conduct that is common to the Class, including but not limited to:

14       a. Whether Defendants, their agents, or co-conspirators engaged in a
15           contract, combination, and/or conspiracy to fix, raise, maintain, or
16           stabilize prices or allocate the market for ODD Products sold in the
17           United States;

18       b. Whether Defendants, their agents, or co-conspirators engaged in a
19           contract, combination, and/or conspiracy to restrict output of ODD
20           Products sold in the United States;

21       c. The duration and extent of any contract, combination and/or
22           conspiracy;

23       d. Whether Defendants, their agents and/or co-conspirators were
24           participants in the contracts, combinations and/or conspiracies alleged
25           herein;

26       e. Whether Defendants, their agents and/or Co-Conspirators engaged in
27           conduct that violated Section 1 of the Sherman Act;

28       f. Whether Defendants, their agents and/or co-conspirators engaged in

| | | |
|---|---|---|
| 1 | | unlawful, unfair or deceptive contracts, combinations or conspiracies |
| 2 | | among themselves, express or implied, to fix, raise, maintain or |
| 3 | | stabilize prices of ODDs sold in and/or distributed in the United |
| 4 | | States; |
| 5 | g. | Whether Defendants, their agents, or co-conspirators engaged in |
| 6 | | conduct in violation of the antitrust, consumer protection, unfair trade, |
| 7 | | and/or deceptive trade practices laws of the various Indirect Purchaser |
| 8 | | States as alleged below; |
| 9 | h. | Whether the anticompetitive conduct of the Defendants, their agents |
| 10 | | and/or co-conspirators caused prices of ODDs to be artificially |
| 11 | | inflated to noncompetitive levels; |
| 12 | i. | Whether Defendants, their agents, or co-conspirators were unjustly |
| 13 | | enriched as a result of their inequitable conduct at the expense of the |
| 14 | | members of the Indirect Purchaser Classes; |
| 15 | j. | Whether Defendants, their agents, or co-conspirators fraudulently |
| 16 | | concealed the existence of their unlawful conduct; |
| 17 | k. | Whether Plaintiffs and the Indirect Purchaser Classes are entitled to |
| 18 | | injunctive relief, and if so, the nature and extent of such injunctive |
| 19 | | relief; and |
| 20 | l. | Whether Plaintiffs and the other members of the Indirect Purchaser |
| 21 | | Classes were injured by Defendants' conduct, and, if so, the |
| 22 | | appropriate Class-wide measure of damages for Class members. |

52. These and other questions of law and fact are common to the Class, and predominate over any questions affecting only individual Class member, including legal and factual issues relating to liability, damages, and restitution.

53. Class action treatment is a superior method for the fair and efficient adjudication of this controversy because:

a. It will avoid a multiplicity of suits and consequent burden on the

1                   courts and Defendants;

2          b.    It would be virtually impossible for all members of the Classes to

3                   intervene as parties-plaintiff in this action;

4          c.    It will allow numerous individuals with claims too small to adjudicate

5                   on an individual basis because of the prohibitive cost of this litigation,

6                   to obtain redress for their economic injuries;

7          d.    The prosecution of separate actions by individual Class members

8                   would create the risk of inconsistent or varying adjudications,

9                   establishing incompatible standards of conduct for Defendants.

10         e.    It is appropriate treatment on a fluid recovery basis, which obviate

11                   any manageability problems; and

12          f.    It will provide court oversight of the claims process, once Defendants'

13                   liability is adjudicated.

14     54.    Plaintiffs' claims are typical of the claims of the Class because Plaintiffs

15 indirectly purchased ODD Products from one or more of the Defendants.

16     55.    Named Plaintiffs will fairly and adequately represent the interests of the

17 Class in that Plaintiffs are indirect purchasers of ODD Products and have no interests that

18 are antagonistic to other members of the Class. Furthermore, Plaintiffs have retained

19 competent counsel experienced in antitrust, class action, and other complex litigation.

20     56.    This case is also appropriate for certification as a class action because the

21 Defendants have acted and refused to act on grounds generally applicable to the Class, so

22 that final injunctive relief will be appropriate with respect to the Class as a whole.

23     57.    The claims asserted herein are also appropriate for class certification under

24 the laws of the State of California and of each of the other states under which claims are

25 asserted.

26

27

28

1

## VII. FACTUAL ALLEGATIONS

2      58.    Plaintiffs are informed and believe, and thereon allege, that faced with
3   shrinking profits from ODD Products, Defendants conspired to fix, raise, maintain, and
4   stabilize the price of ODDs in the United States at artificially inflated and anticompetitive
5   levels in order to preserve and increase their revenues. This artificial price increase was
6   passed on from direct purchasers to indirect purchasers in the ODD Product market.

7   **A.    Characteristics of the ODD Products Industry Made it Ripe for Collusion**

8      59.    The ODD Products industry has several characteristics that facilitate a
9   conspiracy, including market concentration, ease of information sharing, multiple
10  interrelated business relationships, significant barriers to entry, and homogeneity of
11  products.

12          **Market Concentration**

13     60.    During the Class Period, the ODD industry has been dominated by
14  relatively few companies, including Defendants. During the Class Period, Defendant
15  HLDS, which is a joint venture between Defendants Hitachi and LG Electronics,
16  established itself as the industry's top manufacturer with overall annual market share of
17  between 25% and 30% of shipments. TSST, a joint venture formed in 2004 by
18  Defendants Toshiba and Samsung, holds an annual market share in excess of 20%,
19  making it the second largest ODD manufacturer in the world. SOI, originally the SNOI
20  joint venture by Defendants Sony Corp. and NEC Corp., holds approximately 16% of the
21  ODD market. In 2008, SOI held approximately 42% of the Blu-Ray installed base share,
22  which is significant because the BD is the de-facto next-generation DVD technology and
23  allows ODD manufacturers to stand out in an industry that has been largely
24  commoditized.    Sony's increased BD production was integral to their overall market
25  share, increasing their overall shipments by approximately 6% that year, In 2008,
26  Defendants HLDS, TSST, and SOI were among the largest producers of ODDs in the
27  world, with a combined market share of approximately 65%. Defendants' dominance and
28  control over the ODD market facilitated their ability to implement their conspiracy to fix

1  the price of ODD Products.

2  **Joint Ventures and Coordinated Business Activities**

3      61.    Defendants were also involved and relied upon joint ventures and long
4  standing business relationships in the ODD market that gave them continuous
5  opportunities to discuss pricing, capacity utilization, and other important prospective
6  market information. As noted above, the first of these joint ventures was HLDS, which
7  was established as a joint venture between Defendants Hitachi and LG Electronics in
8  November, 2000 and started operation in January, 2001. In April, 2004, Defendants
9  Toshiba and Samsung consolidated their optical disc drive divisions to form TSST.
10  Approximately two years later, Sony and NEC Corporation entered into an optical disc
11  drive joint venture to form SNOI.

12      62.    The formation of these joint ventures evidences the exchange of
13  information between Defendants, which provided the opportunity to conspire, and
14  supported an ongoing antitrust conspiracy between them. Furthermore, the mutually
15  beneficial nature of the business relations between certain Defendants created a financial
16  incentive to do so. As one Sony spokesman explained when announcing the formation of
17  SNOI, the joint venture came into existence because: ***"There was a feeling that those***
18  ***two complementary strengths [Sony and NEC] would make more sense in a joint***
19  ***venture than competing against each other."***

20  **Barriers to Entry in the ODD Industry**

21      63.    There are significant manufacturing and technological barriers to entry into
22  the ODD industry. In order to compete in the ODD industry, companies have to spend
23  hundreds of millions of dollars in research and development, licensing, manufacturing,
24  and marketing of products. Moreover, the ownership and control exerted by Defendants
25  over ODD Product technology and market share through their joint ventures has allowed
26  Defendants to dictate who enters the market and at what cost. These barriers to entry
27  have made it extremely difficult for smaller manufacturers of ODD Products to compete
28  with Defendants and overcome the effects of economies of scale. Accordingly, the

1 financial structure of the ODD industry allowed Defendants to implement their antitrust
2 conspiracy by eliminating competition and artificially stabilizing the prices of ODD
3 Products without losing market share.

4 **Trade and Business Organizations**

5 64. During the Class Period, Defendants were members of trade and business
6 organizations that focused on ODD Products and related industries, such as the DVD
7 Forum, the Optical Storage Technology Association ("OSTA"), and the International
8 Symposium of Optical Memory ("ISOM"). The DVD Forum, which includes Defendants
9 Hitachi, LG Electronics, Samsung, Sony, and Toshiba as members of its steering
10 committee, is an organization responsible for the licensing and distribution of DVD
11 products whose "purpose is to exchange and disseminate ideas and information about the
12 DVD Format and its technical capabilities, improvements and innovations." OSTA's
13 members include LG Electronics and Sony. As explained on its website, OSTA was:

14
15
16
17
18
> incorporated as an international trade association in 1992 to promote the
> use of writable optical technologies and products for storage of computer
> data. The organization's membership includes optical product
> manufacturers and resellers from three continents, representing more than
> 85 percent of worldwide writable optical product shipments. They work to
> shape the future of the industry through regular meetings of CD/DVD, file
> interchange, market development, magneto-optical and planning
> committees.

19 65. During the Class Period, these organizations held multiple meetings and
20 conferences attended by Defendants and their employees, which provided Defendants
21 with the opportunity to meet, discuss, and agree upon their pricing of ODD Products.

22 **Standardization of ODD Products**

23 66. Since its inception in the 1970s, the ODD industry has been typified by
24 standardization of discs (*e.g.*, CD-ROMs, DVD-ROMs) and related ODD Products
25 driven by industry participants and a variety of industry-related organizations such as
26 ECMA International, the International Standardization Organization ("ISO"), and
27 International Electrotechnical Commission ("IEC"). These organizations and their
28 members are dedicated to "standardizing the use of information communication

1   technology and consumer electronics."

2       67.   The ODD industry is also subject to patents and intellectual property rights

3   which require adoption of standardized product specifications.   As stated by Philips

4   Consumer Electronics B.V., which is responsible for the development of CD technology

5   and continues to hold patents and licensing rights arising therefrom:

6       Standardization offers many other advantages to industry as a whole. For
        example: [1] Improvements to performance, compatibility, reliability, safety
7       and interoperability; [2] Economies of scale and lower costs – for example,
8       by allowing manufacturers to address multiple regions with a single product
        or manufacturing line; and [3] *Cooperation between industry leaders,*
9       *reducing the risk for 'first-mover' companies which pioneer new products*
10      *or technologies.*(Emphases added)

11      68.   The standardization of the ODD Products industry provided Defendants

12   with the mechanism to implement, enforce, and oversee their anticompetitive conspiracy

13   to fix the price of ODD Products.   Furthermore, as a result of this standardization, ODD

14   Products are commodity products, and buyers make decisions to purchase such products

15   based largely, if not exclusively, on price.

16   **B.   Government Investigations of Price-Fixing in the ODD Market**

17      69.   Defendants have been the subject of government investigations for their

18   cartel activity in recent years.   For example, Samsung admitted guilt and paid a $300

19   million fine following an investigation by the United States Department of Justice

20   ("DOJ") into price-fixing of dynamic random access memory ("DRAM") computer chips.

21   The DOJ is currently investigating Samsung, LG Electronics, Toshiba, and Hitachi,

22   among others, concerning collusion among manufacturers of thin film transistor liquid

23   crystal display ("TFT-LCDs").   The ongoing TFT-LCD criminal investigation has

24   resulted in hundreds of millions of dollars in criminal penalties and admissions of guilt

25   by LG Electronics ($400 million) and Hitachi ($31 million).

26      70.   These same companies have been under investigation in the European

27   Union ("EU").   The entities mentioned in the preceding paragraph are all under

28   investigation for colluding to fix prices on TFT-LCDs sold in Europe.   In November,

1  2007, the EU fined, *inter alia*, Sony and various related entities and the Hitachi Maxell

2  Limited joint venture $110 million for fixing the prices of professional videotapes sold in

3  Europe between 1999 and 2002. Similarly, Hitachi and Toshiba were fined by the

4  European Commission for their roles in a conspiracy to control prices and allocate market

5  shares in the market for gas-insulated switchgear between 1988 and 2004.

6      71.    Plaintiffs are informed and believe, and thereon allege, that Defendants are

7  currently under investigation by the DOJ for anticompetitive conduct in connection with

8  the ODD industry. Plaintiffs are further informed and believe, and thereon allege, that

9  the United States' criminal investigation of the ODD conspiracy is being conducted by

10  the DOJ's Antitrust Division in the Northern District of California.

11      72.    On Monday, October 26, 2009, Defendants SOA, TSST and HLDS

12  confirmed that they received subpoenas from the DOJ in connection with a criminal

13  antitrust investigation into possible price-fixing, bid-rigging, and allocation of markets

14  regarding ODDs. News reports indicated that EU and Singaporean antitrust authorities

15  were conducting similar investigations.

16      73.    It is significant that Defendants' anticompetitive behavior has been the

17  subject of a criminal grand jury investigation by the DOJ. In order for the DOJ to

18  institute a grand jury investigation, a DOJ Antitrust Division attorney must believe that a

19  crime has been committed and prepare a detailed memorandum to that effect. *See*

20  Antitrust Grand Jury Practice Manual, Vol. 1, Ch. I.B.1 ("[i]f a Division attorney believes

21  that a criminal violation of the antitrust laws has occurred, he should prepare a

22  memorandum requesting authority to conduct a grand jury investigation.") Furthermore,

23  following a review of the memorandum, the request for a grand jury must be approved by

24  the Assistant Attorney General for the Antitrust Division, based on the standard that a

25  criminal violation may have occurred. *See id.* In addition, the fact that the DOJ Antitrust

26  Division investigation is criminal, as opposed to civil, is significant as well.    The

27  Antitrust Division's "Standards for Determining Whether to Proceed by Civil or Criminal

28  Investigation" state: "[i]n general, current Division policy is to proceed by criminal

1    investigation and prosecution in cases involving horizontal, per se unlawful agreements
2    such as price fixing, bid rigging and horizontal customer and territorial allocations." *See*
3    Antitrust Division Manual, Chapter III.C.5. Accordingly, the existence of a criminal
4    investigation into the ODD industry supports the existence of the conspiracy alleged
5    herein.

6    **C.**    **Effects of Defendants' Antitrust Violations**

7         74.    The above combination and conspiracy has had the following effects,
8    among others:

9           a.    Price competition in the sale of ODD Products by Defendants and their
10                 co-conspirators has been restrained, suppressed, and eliminated
11                 throughout the United States;

12           b.    Prices for ODD Products sold by Defendants have been raised, fixed,
13                 maintained, and stabilized at artificially high and noncompetitive
14                 levels throughout the United States;

15           c.    Inflated prices have been passed on from direct purchasers to indirect
16                 purchasers; and

17           d.    Indirect purchasers of ODD Products have been deprived of the
18                 benefit of free and open competition in the purchase of ODD Products.

19         75.    As a direct and proximate result of the unlawful conduct of Defendants,
20    Plaintiffs and other members of the Nationwide Class have been injured in their
21    businesses and property in that they paid more for ODD Products than they otherwise
22    would have paid in the absence of the unlawful conduct of Defendants.

23    **D.**    **Fraudulent Concealment**

24         76.    Plaintiffs and members of the Classes alleged herein had neither actual nor
25    constructive knowledge of the facts constituting its claim for relief despite diligence in
26    trying to discover the pertinent facts. Plaintiffs and members of said Classes did not
27    discover, and could not have discovered through the exercise of reasonable diligence, the
28    existence of the conspiracy alleged herein until October, 2009 when the antitrust

1   investigation by the DOJ became public. Defendants engaged in a secret conspiracy that
2   did not give rise to facts that would put Plaintiffs or members of said Classes alleged
3   herein on inquiry notice that there was a conspiracy to fix prices for ODDs or that they
4   were paying artificially high prices for ODD Products.

5       77.    Plaintiffs are informed and believe, and thereon allege, that the affirmative
6   acts of Defendants alleged herein, including acts in furtherance of the conspiracy, were
7   wrongfully concealed and carried out in a manner that precluded detection.

8       78.    Plaintiffs are informed and believe, and thereon allege, that by its very
9   nature, Defendants' price-fixing conspiracy was inherently self-concealing. As alleged
10  above, Defendants had secret discussions about price and output through joint ventures,
11  direct contact, and through trade and business organizations. Defendants agreed not to
12  publicly discuss the existence or the nature of their agreements.

13      79.    Plaintiffs are informed and believe, and thereon allege, that Defendants
14  repeatedly gave pre-textual justifications for the inflated prices of ODDs and ODD
15  Products in furtherance of the conspiracy.

16      80.    Plaintiffs are informed and believe, and thereon allege, that Defendants'
17  purported reasons for the pricing of ODDs and ODD Products were materially false and
18  misleading and made for the purpose of concealing Defendants' anti-competitive scheme
19  as alleged herein. As a result of Defendants' fraudulent concealment of their conspiracy,
20  the running of any statue of limitations has been tolled with respect to any claims that
21  Plaintiffs or any proposed Class members have alleged in this Complaint as a result of the
22  anticompetitive conduct.

23
24
25
26
27
28

1

## VIII. VIOLATIONS ALLEGED

2

### A. First Claim for Relief: Violation of Section 1 of Sherman Act

3    81.    Plaintiffs incorporate and re-allege, as though fully set forth herein, each
4    and every allegation set forth in the preceding paragraphs of this Complaint.

5    82.    Beginning at least as early as November 1, 2005, the exact date being
6    unknown to Plaintiffs and exclusively within the knowledge of Defendants, Defendants,
7    their agents and co-conspirators engaged in a continuing contract, combination or
8    conspiracy to suppress and eliminate competition by fixing the prices of ODDs. The
9    contract, combination or conspiracy engaged in by Defendants and their co-conspirators
10   was an unreasonable restraint of interstate and foreign trade and commerce in violation of
11   Section 1 of the Sherman Act (15 U.S.C. § 1).

12   83.    In particular, Defendants have combined and conspired to raise, fix,
13   maintain or stabilize the prices of ODD Products sold in the United States.

14   84.    The contract, combination or conspiracy among Defendants consisted of a
15   continuing agreement, understanding, and concert of action among Defendants, their
16   agents and/or their co-conspirators, the substantial terms of which were to agree to fix the
17   prices of ODDs.

18   85.    As a result of Defendants' unlawful conduct, prices for ODD Products were
19   raised, fixed, maintained, and stabilized in the United States.

20   86.    For purposes of formulating and effectuating the charged contract,
21   combination, or conspiracy, Defendants, their agents and co-conspirators did those things
22   they contracted, combined, or conspired to do, including, among other things:

23          a.    participating in meetings, conversations and communications to
24                discuss the prices and supply of ODD Products;

25          b.    communicating in writing and orally to fix prices of ODD Products;

26          c.    agreeing, during those meetings, conversations and communications,
27                to manipulate and set pre-determined prices and supply of ODD
28                Products sold in the United States in a manner that deprived indirect

1          purchasers of free and open competition in the market;

2          d.      Issuing price announcements and price quotations in accordance with

3                  the agreements reached;

4          e.      selling ODD Products to direct purchasers in the United States at non-

5                  competitive prices, which were then passed on to indirect purchasers;

6          f.      providing false statements to the public to explain increased prices for

7                  ODD Products; and

8          g.      exchanging information on sales of ODD Products, for purpose of

9                  monitoring and enforcing adherence to the agreed-upon price.

10         87.     As a result of Defendants' unlawful conduct, Plaintiffs and the other

11  members of the Nationwide Class have been injured in their businesses and property in

12  that they have paid more for ODD Products than they otherwise would have paid in the

13  absence of Defendants' unlawful conduct.

14         88.     Plaintiffs and the Nationwide Class are entitled to an injunction against

15  Defendants, preventing and restraining the violations alleged herein.

16  **B.      Second Claim for Relief:   Unjust Enrichment and Disgorgement of**

17  **Profits**

18         89.     Plaintiffs incorporate and re-allege, as though fully set forth herein, each

19  and every allegation set forth in the preceding paragraphs of this Complaint.

20         90.     Defendants have been unjustly enriched through overpayments by Plaintiffs

21  and Class members and the profits that resulted from those transactions throughout the

22  United States.

23         91.     Under common law principles of unjust enrichment, Defendants should not

24  be permitted to retain the benefits conferred via overpayments by Plaintiffs and Class

25  members.

26         92.     Plaintiffs and all members of the Class seek disgorgement of all profits

27  resulting from said overpayments and establishment of a constructive trust from which

28  Plaintiffs and Class members may seek restitution.

**C.** **Third Claim for Relief:** **Violation of State Antitrust and Unfair Competition Laws**

93. Plaintiffs incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

94. Plaintiff Christopher Johnson ("California Plaintiff") incorporates and re-alleges each and every allegation set forth in the preceding paragraphs of this Complaint.

    a.    Defendants' business acts and practices were centered, carried out, effectuated, and perfected mainly within the State of California, and Defendants' conduct injured all members of the California Indirect Purchaser Class. Therefore, this claim for relief under California law is brought on behalf of the California Indirect Purchaser Class.

    b.    Beginning at least as early as November 1, 2005, the exact date being unknown to Plaintiffs and exclusively within the knowledge of Defendants, and continuing to the present, Defendants, their agents and/or their co-conspirators entered into and engaged in continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code. Defendants, and each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, ODDs and ODD Products at supracompetitive levels.

    c.    The aforementioned violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and to allocate markets for, ODD and ODD Products.

    d.    For the purpose of forming and effectuating the unlawful trust, the

28

Defendants and their co-conspirators have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and the following:

(1) Fixing, raising, stabilizing, and pegging the price of ODDs; and

(2) Allocating among themselves the production of ODDs.

e.     The combination and conspiracy alleged herein has had, *inter alia*, the following effects:

(1) Price competition in the sale of ODDs and ODD Products has been restrained, suppressed, and/or eliminated in the State of California;

(2) Prices for ODDs and ODD Products sold by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and

(3) Those who purchased ODDs and ODD Products directly or indirectly from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

f.     As a direct and proximate result of the Defendants' unlawful conduct, California Plaintiffs and the members of the California Indirect Purchaser Class have been injured in their business and property in that they paid more for ODD Products than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, California Plaints and the California Indirect Purchaser Class seek treble damages and their cost of suit, including reasonable attorney fees, pursuant to Section 16750 of the California Business and Professions Code.

29

95. Plaintiffs Sally O'Donoghue and Dennis McDavid ("Arizona Plaintiffs") incorporate and re-allege each and every allegation set forth in the preceding paragraphs of this Complaint.

      a.  Defendants' combinations or conspiracies had the following effects: (1) ODD price competition was restrained, suppressed, and eliminated throughout Arizona; (2) ODD prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) Arizona Plaintiffs and members of the Arizona Indirect Purchaser Class were deprived of free and open competition; and (4) Arizona Plaintiffs and members of the Arizona Indirect Purchaser Class paid supracompetitive, artificially inflated prices for ODDs and ODD Products.

      b.  During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

      c.  As a direct and proximate result of Defendants' unlawful conduct, Arizona Plaintiffs and members of the Arizona Indirect Purchaser Class have been injured in their business and property and are threatened with further injury.

      d.  By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Arizona Revised Stat. §§ 44-1401, et seq. Accordingly, Arizona Plaintiffs and the members of the Arizona Indirect Purchaser Class seek all forms of relief available under Arizona Revised Stat. §§ 44-1401, et seq.

96. Plaintiff Murray Miller ("Florida Plaintiff") incorporates and re-alleges each and every allegation set forth in the preceding paragraphs of this Complaint.

      a.  Defendants' combinations or conspiracies had the following effects: (1) ODD price competition was restrained, suppressed, and eliminated throughout Florida; (2) ODD prices were raised, fixed, maintained

1     and stabilized at artificially high levels throughout Florida; (3) Florida

2     Plaintiff and members of the Florida Indirect Purchaser Class were

3     deprived of free and open competition; and (4) Florida Plaintiff and

4     members of the Florida Indirect Purchaser Class paid

5     supracompetitive, artificially inflated prices for ODDs and ODD

6     Products.

7     b.   During the Class Period, Defendants' illegal conduct substantially

8     affected Florida commerce.

9     c.   As a direct and proximate result of Defendants' unlawful conduct,

10     Florida Plaintiff and members of the Florida Indirect Purchaser Class

11     have been injured in their business and property and are threatened

12     with further injury.

13     d.   By reason of the foregoing, Defendants entered into agreements in

14     restraint of trade in violation of Florida Stat. §§ 542.15, *et seq.*

15     Accordingly, Florida Plaintiff and the members of the Florida Indirect

16     Purchaser Class seek all forms of relief available under that statute.

17     97.   Plaintiff Andrew Crosby ("Tennessee Plaintiff") incorporates and re-alleges

18 each and every allegation set forth in the preceding paragraphs of this Complaint.

19     a.   Defendants' combinations or conspiracies had the following effects:

20     (1) ODD price competition was restrained, suppressed, and eliminated

21     throughout Tennessee; (2) ODD prices were raised, fixed, maintained

22     and stabilized at artificially high levels throughout Tennessee; (3)

23     Tennessee Plaintiff and members of the Tennessee Indirect Purchaser

24     Class were deprived of free and open competition; and (4) Tennessee

25     Plaintiff and members of the Tennessee Indirect Purchaser Class paid

26     supracompetitive, artificially inflated prices for ODDs and ODD

27     Products.

28     b.   During the Class Period, Defendants' illegal conduct had a substantial

1       effect on Tennessee commerce as products containing ODDs were

2       sold in Tennessee.

3           c.   As a direct and proximate result of Defendants' unlawful conduct,

4                Tennessee Plaintiff and members of the Tennessee Indirect Purchaser

5                Class have been injured in their business and property and are

6                threatened with further injury.

7           d.   By reason of the foregoing, Defendants have entered into agreements

8                in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-

9                101, *et seq.* Accordingly, Tennessee Plaintiff and all members of the

10               Tennessee Indirect Purchaser Class seek all relief available under

11               Tennessee Code Ann. §§ 47-25-101, *et seq.*

12      **D.     Fourth Claim for Relief: Violation of State Consumer Protection and**

13      **Unfair Competition Laws**

14      98.    Plaintiffs incorporate and re-allege, as though fully set forth herein, each

15   and every allegation set forth in the preceding paragraphs of this Complaint.

16      99.    Plaintiff Christopher Johnson ("California Plaintiff") incorporates and re-

17   alleges each and every allegation set forth in the preceding paragraphs of this Complaint.

18           a.   Defendants' business acts and practices were centered, carried out,

19                effectuated, and perfected mainly within the State of California, and

20                Defendants' conduct injured all members of the California Indirect

21                Purchaser Class. Therefore, this claim for relief under California law

22                is brought on behalf of the California Indirect Purchaser Class.

23           b.   Beginning at least as early as November 1, 2005, the exact date being

24                unknown to Plaintiff and exclusively within the knowledge of

25                Defendants, and continuing to the present, Defendants committed and

26                continue to commit acts of unfair competition as defined by Sections

27                17200, *et seq.* of the California Business and Professions Code, by

28                engaging in the acts and practices specified above.

32

c.   This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

d.   Defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, et seq., including but not limited to the following:

(1) the violations of Section 1 of the Sherman Act, as set forth above;

(2) the violations of Section 16720, *et seq.*, of the California Business and Professions Code, set forth above;

(3) Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.*, of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

(4) Defendants' acts or practices are unfair to consumers of ODD Products in the State of California within the meaning of Section 17200, California Business and Professions Code; and

(5) Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

e.   California Plaintiff and each of the California Indirect Purchaser Class members are entitled to full restitution and/or disgorgement of all

1                 revenues, earnings, profits, compensation, and benefits that may have

2                 been obtained by Defendants as a result of such business acts or

3                 practices.

4             f.     The illegal conduct alleged herein is continuing and there is no

5                 indication that Defendants will not continue such activity in the

6                 future.

7             g.     The unlawful and unfair business practices of Defendants, and each of

8                 them, as described above, have cause and continue to cause Plaintiffs

9                 and the members of the California Indirect Purchaser Class to pay

10                supracompetitive and artificially inflated prices for ODD Products.

11                California Plaintiffs and the members of the California Indirect

12                Purchaser Class suffered injury in fact and lost money or property as a

13                result of such unfair competition.

14            h.     The conduct of Defendants as alleged in this Complaint violates

15                Section 17200 of the California Business and Professions Code.

16            i.     As alleged in this Complaint, Defendants and their co-conspirators

17                have been unjustly enriched as a result of their wrongful conduct and

18                by Defendants' unfair competition.   California Plaintiffs and the

19                members of the California Indirect Purchaser Class are accordingly

20                entitled to equitable relief including restitution and/or disgorgement of

21                all revenues, earnings, profits, compensation and benefits that may

22                have been obtained by Defendants as a result of such business

23                practices, pursuant to California Business and Professions Code,

24                Sections 17203 and 17204.

25       100.    Plaintiffs Sally O'Donoghue and Dennis McDavid ("Arizona Plaintiffs")

26 incorporates and re-alleges each and every allegation set forth in the preceding

27 paragraphs of this Complaint.

28            a.     Defendants' unlawful conduct had the following effects: (1) ODD

1     price competition was restrained, suppressed and eliminated
2     throughout Arizona; (2) ODD prices were raised, fixed, maintained,
3     and stabilized at artificially high levels throughout Arizona; (3)
4     Arizona Plaintiffs and members of the Arizona Indirect Purchaser
5     Class were deprived of free and open completion; and (4) Arizona
6     Plaintiffs and members of the Arizona Indirect Purchaser Class paid
7     supracompetitive, artificially inflated prices for ODD Products.

8     b.    During the Class Period, Defendants' illegal conduct substantially
9           affected Arizona commerce and consumers.

10    c.    As a direct and proximate result of Defendants' unlawful conduct,
11          Arizona Plaintiffs and members of the Arizona Indirect Purchaser
12          Class have been injured and are threatened with further injury.

13    d.    Defendants have engaged in unfair competition or unfair or deceptive
14          acts or practices in violation of Arizona Revised Stat. §§ 44-1521, *et*
15          *seq*., and, accordingly, Arizona Plaintiffs and all members of the
16          Arizona Indirect Purchaser Class seek all relief available under that
17          statute.

18    101.  Plaintiff Andrew Crosby ("Florida Plaintiff") incorporates and re-alleges
19    each and every allegation set forth in the preceding paragraphs of this Complaint.

20    a.    Defendants' unlawful conduct had the following effects: (1) ODD
21          price competition was restrained, suppressed and eliminated
22          throughout Florida; (2) ODD prices were raised, fixed, maintained,
23          and stabilized at artificially high levels throughout Florida; (3) Florida
24          Plaintiff and members of the Florida Indirect Purchaser Class were
25          deprived of free and open completion; and (4) Florida Plaintiff and
26          members of the Florida Indirect Purchaser Class paid
27          supracompetitive, artificially inflated prices for ODD Products.

28    b.    During the Class Period, Defendants' illegal conduct substantially

1  affected Florida commerce and consumers.

2       c.    As a direct and proximate result of Defendants' unlawful conduct,
3             Florida Plaintiff and members of the Florida Indirect Purchaser Class
4             have been injured and are threatened with further injury.

5       d.    Defendants have engaged in unfair competition or unfair or deceptive
6             acts or practices in violation of Florida Stat. § 501.201, *et seq.*, and,
7             accordingly, Florida Plaintiff and all members of the Florida Indirect
8             Purchaser Class seek all relief available under that statute.

9   102.  Plaintiff Andrew Crosby ("Tennessee Plaintiff") incorporates and re-alleges
10  each and every allegation set forth in the preceding paragraphs of this Complaint.

11      a.    Defendants' unlawful conduct had the following effects: (1) ODD
12            price competition was restrained, suppressed and eliminated
13            throughout Tennessee; (2) ODD prices were raised, fixed, maintained,
14            and stabilized at artificially high levels throughout Tennessee; (3)
15            Tennessee Plaintiff and members of the Tennessee Indirect Purchaser
16            Class were deprived of free and open completion; and (4) Tennessee
17            Plaintiff and members of the Tennessee Indirect Purchaser Class paid
18            supracompetitive, artificially inflated prices for ODD Products.

19      b.    During the Class Period, Defendants' illegal conduct substantially
20            affected Tennessee commerce and consumers.

21      c.    As a direct and proximate result of Defendants' unlawful conduct,
22            Tennessee Plaintiff and members of the Tennessee Indirect Purchaser
23            Class have been injured and are threatened with further injury.

24      d.    Defendants have engaged in unfair competition or unfair or deceptive
25            acts or practices in violation of Tennessee Code Ann. §§ 47-18-101, *et*
26            *seq.*, and, accordingly, Tennessee Plaintiff and all members of the
27            Tennessee Indirect Purchaser Class seek all relief available under §
28            47-18-109.

**IX. DAMAGES**

103. During the Class Period, Plaintiffs and the other members of the Classes alleged herein purchased ODDs indirectly from Defendants, their subsidiaries, agents, and/or affiliates, and, by reason of the antitrust violations herein alleged, paid more for such products than they would have paid in the absence of such antitrust violations. As a result, Plaintiffs and the other Class members have sustained damages to their businesses and property in an amount to be determined at trial.

**X. PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court enter judgment on its behalf and on behalf of the Nationwide Class members, adjudging and decreeing that:

A. This Court determine that the Sherman Act, state antitrust law, and state consumer protection and unfair competition law claims alleged herein may be maintained as a class action suit under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, as informed by the respective state class action laws;

B. This action may proceed as with named Plaintiffs as the designated Class Representatives and their counsel as Class Counsel;

C. The unlawful conduct, contract, conspiracy and combination alleged herein be adjudged and decreed to be:

1. A restraint of trade or commerce in violation of Section 1 of the Sherman Act, as alleged in the First Claim for Relief herein, and that Plaintiffs and the Nationwide Class have been inured in their businesses and property as a result of Defendants' actions;

2. Acts of unjust enrichment as set forth in the Second Claim for Relief herein;

3. An unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust laws identified in the Third Claim for Relief herein; and

4.    Violations of the state consumer protection and unfair competition laws identified in the Fourth Claim for Relief herein;

D.    Plaintiffs and the members of the Classes alleged herein recover damages sustained by them, as provided by state antitrust laws, and that a joint and several judgment in favor of Plaintiffs and the Classes alleged herein be entered against the Defendants in an amount to be trebled in accordance with such laws;

E.    Plaintiffs and the State Classes alleged herein recover damages, to the maximum extent allowed by state consumer protection laws,

F.    Defendants, their subsidiaries, affiliates, successors, transferees, assignees, and the respective officers, directors, partners, agents, and employees thereof and all other persons acting or claiming to act on their behalf be permanently enjoined and restrained from continuing and maintaining the combination, conspiracy, or agreement alleged herein, or from entering into any other conspiracy alleged herein, or from entering into any other contract, conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program or device having a similar purpose or effect;

G.    The Court enter an order of divestiture requiring Defendants to rescind and/or dissolve the cooperation agreements, joint ventures and/or cross-license agreements alleged herein between and among them used to facilitate the conspiracy alleged herein;

H.    Plaintiffs and members of the Classes alleged herein be awarded restitution, including disgorgement of profits obtained by Defendants as a result of their acts of unfair competition and acts of unjust enrichment;

I.    Plaintiffs and the members of the Classes alleged herein be awarded pre-judgment and post-judgment interest, and that such interest be awarded at the highest legal rate from and after the date of service of the initial complaint in

1    this action;

2    F.    Plaintiffs and the members of the Classes alleged herein recover their costs

3    of this suit, including reasonable attorneys' fees as provided by law; and

4    G.    Plaintiffs and the members of the Classes alleged herein receive such other

5    or further relief that the Court deems to be just and proper under the

6    circumstances.

7                    **XI.    JURY TRIAL DEMANDED**

8    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demands a trial by

9    jury of all of the triable claims asserted in this Complaint.

10

11   DATED: February 3, 2010          By:

Thomas V. Girardi, SBN # 36603
Stephen G. Larson, SBN # 145225
**GIRARDI | KEESE**
1126 Wilshire Boulevard
Los Angeles, California 90017
Telephone: 213-977-0211
Facsimile: 213-481-1554
Email: tgirardi@girardikeese.com
Email: slarson@girardikeese.com

*Counsel for Plaintiffs
and Proposed Class Members*

39
CLASS ACTION COMPLAINT